FILED

APR 27 2022

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | 1 : 22 CR 191 |
| | ) | |
| v. | ) | CASE NO._____ |
| | ) | Title 18, United States Code, |
| SLEIMAN AWADA, | ) | Sections 641 and 371 |
| | ) | |
| Defendant. | ) | JUDGE BARKER |

## GENERAL ALLEGATIONS

At all times material and relevant to this Indictment:

1.     Defendant SLEIMAN AWADA regularly worked at Convenience Food Mart, a convenience store owned by his brother, H.A.A., and located at 4021 Warrensville Center Road, Warrensville Heights, Ohio, in the Northern District of Ohio.  AWADA was paid in cash but did not get a Form W-2 or a Form 1099 from Convenience Food Mart.  AWADA's wife did not work at Convenience Food Mart.  Nevertheless, he had paystubs created indicating that she worked at Convenience Food Mart.  AWADA (i) failed to disclose his own work and (ii) falsely claimed that his wife did work in order to receive benefits to which he was not entitled from the following programs.

### Federal Programs Administered Through the State of Ohio

2.     The Ohio Department of Job and Family Services (ODJFS) is a state agency that receives federal funding for the administration of a number of public assistance programs including Supplemental Nutrition Assistance Program (SNAP) and Medicaid benefits.  ODJFS is responsible for determining eligibility, processing applications, administration of funds and for

paying Medicaid benefits on behalf of recipients. Each of Ohio's 88 counties operates a county job and family services office that coordinates with ODJFS for the administration of the public assistance programs for the residents of each county. The Cuyahoga County Department of Job and Family Services office covers all the cities located in Cuyahoga County, Ohio, which includes Warrensville Heights. Eligibility to receive compensation from these funds is determined by specific facts provided by the applicant regarding his or her family, job status, and source(s) of income.

**Medicaid**

3.      Medicaid is federal program that provides financial assistance to individuals and families to meet medical expenses. Medicaid funding is provided by the Department of Health and Human Services (HHS) to individual states, who, in turn, provide funds to applicants.

4.      To receive Medicaid funds, individuals or families must fill out forms with the State of Ohio attesting that their income falls below a certain threshold, and they are not able to purchase health insurance based on their income. Individuals cannot receive Medicaid if they decline health insurance offered through their employer.

5.      AWADA fraudulently applied for and received more than $215,000 in Medicaid benefits.

**SNAP**

6.      SNAP is a federally funded governmental program administered by the United States Department of Agriculture (USDA) through the USDA Food and Nutrition Service (FNS) in each state. SNAP benefits cards or Electronic Benefit Transfer (EBT) cards are similar to a bank debit card in that a SNAP recipient can purchase food from authorized retailers using the EBT card. SNAP benefits are commonly referred to as "food stamp benefits." Retail stores may

participate in SNAP only with the authorization of FNS. Each authorized SNAP recipient is issued an Ohio Direction EBT card that contains a unique account number and an encrypted personal identification number (PIN). SNAP benefits are downloaded monthly to recipients' EBT cards. The Ohio EBT system is operated through a contract between the FNS and the State of Ohio and administered by ODJFS.

7.    Pursuant to the Food and Nutrition Act, recipients are permitted to use food stamp benefits only for eligible food items. Food stamp benefits cannot be exchanged or redeemed for cash, nor can they be used to obtain items such as cigarettes. Food stamp benefits may only be used to purchase items for the personal consumption of the intended recipient(s). Items purchased using food stamp benefits are not permitted to be used for commercial purposes.

8.    Prospective retailers seeking authorization to process SNAP benefits are required to complete an application process and are required to sign a certification that they understand the rules and regulations of the SNAP program and take responsibility for any violations.

9.    On or about January 22, 2004, H.A.A. completed and submitted a "Food Stamp Program Application for Stores," on behalf of AWADA, INC. dba Convenience Food Mart, 4021 Warrensville Center Road, Warrensville Heights, Ohio to the USDA-FNS. On or about February 19, 2004, the USDA-FNS authorized AWADA, INC. to participate in the Food Stamp Program.

10.    SNAP funds available through the State of Ohio were provided through electronic transfers originating outside the State of Ohio before being electronically dispersed to recipients in the form of funds loaded onto debit cards.

11.     AWADA fraudulently applied for and received benefits by creating and submitting false paystubs for his wife and by failing to disclose his own work at Convenience Food Mart. In total, he and his family received more than $100,000 in SNAP benefits.

12.     AWADA conspired with his brother, H.A.A., to direct others to misuse their SNAP benefits by paying others to use their SNAP benefits to buy goods from other stores in order to provide inventory at AWADA, INC. dba Convenience Food Mart.

**Social Security Disability**

13.     The Social Security Administration (SSA) administers the Disability Insurance Program. The purpose of the Disability Insurance program is to provide income as an earned entitlement to persons who have lost the ability to earn substantial gainful wages, or self-employment earnings, due to a physical or mental impairment. Eligible disabled persons, and at times their children and/or spouse, collect a monthly Disability Insurance benefit.

14.     Medical recovery and/or work activity are events that affect ongoing entitlement to Disability Insurance benefits. Disability Insurance beneficiaries are required to truthfully report to the SSA any changes in their circumstances that might impact ongoing entitlement. Beneficiaries must report if their disabling condition improves, and they must also report any and all changes in ability to work. Beneficiaries must truthfully report to the SSA if they are working in any capacity, to include work that generates monetary pay, in-kind pay, self-employment, full-time work and/or part-time work. Excluding the requirement to report any and all work activity to the SSA, beneficiaries are also required to be entirely truthful when providing information to the SSA regarding their medical condition, to include truthful reporting about activities of daily living and alleged mental or physical limitations.

15.     AWADA fraudulently accepted Social Security benefits.  AWADA received more than $200,000 in fraudulent Disability Insurance benefits (including benefits he received for dependents) from the SSA since his first payment was issued in year 2012.

COUNT 1
(Theft of Public Money, 18 U.S.C. § 641)

The Grand Jury charges:

16.     The allegations set forth in Paragraphs 1 through 15 are incorporated herein by reference.

17.     From in or around November 2015 through in or around March 2022, in the Northern District of Ohio, Eastern Division, Defendant SLEIMAN AWADA did knowingly and willfully embezzle, steal, purloin and convert to his use, and the use of another, Medicaid Benefits, being money and property of the United States, and of a value in excess of $1,000, to wit: Defendant fraudulently applied for and received Medicaid Benefits to which he was not entitled.

All in violation of Title 18, United States Code, Section 641.

COUNT 2
(Theft of Public Money, 18 U.S.C. § 641)

The Grand Jury further charges:

18.     The allegations set forth in Paragraphs 1 through 15 are incorporated herein by reference.

19.     From in or around November 2015 through in or around March 2022, in the Northern District of Ohio, Eastern Division, Defendant SLEIMAN AWADA did knowingly and willfully embezzle, steal, purloin and convert to his use, and the use of another, Supplemental Nutrition Assistance Program (SNAP) benefits, being money and property of the United States,

and of a value in excess of $1,000, to wit: Defendant fraudulently applied for and received SNAP benefits to which he was not entitled.

All in violation of Title 18, United States Code, Section 641.

COUNT 3
(Theft of Public Money, 18 U.S.C. § 641)

The Grand Jury further charges:

20.     The allegations set forth in Paragraphs 1 through 15 are incorporated herein by reference.

21.     From in or around August 2015 through in or around March 2022 in the Northern District of Ohio, Eastern Division, Defendant SLEIMAN AWADA did knowingly and willfully embezzle, steal, purloin and convert to his use, and the use of another, Social Security Disability benefits, being money and property of the United States, and of a value in excess of $1,000, to wit: Defendant fraudulently applied for and received Social Security Disability benefits to which he was not entitled.

All in violation of Title 18, United States Code, Section 641.

COUNT 4
(Conspiracy to Defraud the United States, 18 U.S.C. § 371)

The Grand Jury further charges:

22.     The allegations set forth in Paragraphs 1 through 15 are incorporated herein by reference.

23.     From in or around May 2019 through in or around September 2020, in the Northern District of Ohio, Eastern Division, Defendant SLEIMAN AWADA and H.A.A. did knowingly combine, conspire, confederate, and agree with each other to defraud the United States.

6

## Object, Manner, and Means of the Conspiracy

24.     The object of the conspiracy was to defraud a federal program, SNAP, which is intended to provide food for the poor.  The manner and means of the conspiracy included directing individuals to use their SNAP benefits to purchase items to be sold for profit at Convenience Food Mart.  Despite knowing that SNAP benefits could only be used to purchase items for consumption by the beneficiary, Defendant SLEIMAN AWADA and H.A.A. regularly requested that individuals purchase specific items needed at Convenience Food Mart with those individuals' SNAP benefits.  AWADA and H.A.A. provided those individuals with money or goods in exchange for the items purchased with SNAP benefits.  AWADA and H.A.A. then sold the items purchased with SNAP benefits for profit at Convenience Food Mart.

## Overt Acts

25.     In furtherance of the conspiracy and to effect the objects thereof, Defendant and others known and unknown to the Grand Jury, did commit and cause to be committed the following overt acts in the Northern District of Ohio, Eastern Division and elsewhere.

   a.  On May 23, 2019, Defendant SLEIMAN AWADA met with an individual at Convenience Food Mart.  AWADA provided the individual $50.00 United States currency for $129.66 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

   b.  On June 17, 2019, AWADA met with an individual at Convenience Food Mart and provided the individual $60.00 United States currency and a pack of cigarettes for $147.52 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

c. On July 3, 2019, H.A.A provided an individual $40.00 in United States currency and a pack of cigarettes for $183.38 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

d. On July 30, 2019, H.A.A. provided an individual $45.00 in United States currency and a pack of cigarettes for $85.96 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

e. On August 15, 2019, AWADA provided an individual $50.00 in United States currency and a pack of cigarettes for $94.40 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

f. On August 28, 2019, AWADA provided an individual $30.00 in United States currency for $78.54 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

g. On December 11, 2019, AWADA provided an individual $100.00 in United States currency and a pack of cigarettes for $257.09 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

h. On January 8, 2020, AWADA provided an individual $140.00 in United States currency for $358.78 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits. The individual also received three packs of cigarettes from AWADA for $22.17 in food stamp benefits.

i.  On February 14, 2020, AWADA provided an individual $65.00 in United States currency for $156.95 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

j.  On May 12, 2020, H.A.A. provided an individual $45.00 in United States currency and a pack of cigarettes for $134.60 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

k.  On June 3, 2020, AWADA provided an individual $100.00 in United States currency for $220.92 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.

l.  On June 25, 2020, AWADA provided an individual $160.00 in United States currency for $387.37 in products that AWADA knew had been acquired outside of Convenience Food Mart with food stamp benefits.  AWADA also sold the individual three packs of cigarettes for $24.00 in food stamp benefits.

m.  On July 16, 2020, H.A.A. provided an individual $90.00 in United States currency for $239.94 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

n.  On August 6, 2020, H.A.A. provided an individual $50.00 in United States currency for $99.47 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

o.  On August 18, 2020, AWADA and H.A.A. provided an individual $150.00 in United States currency for $389.37 in products that AWADA and H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

The individual also exchanged $15.00 in food stamp benefits for two packs of cigarettes.

p.  On September 15, 2020, H.A.A. provided an individual $80.00 in United States currency for $151.96 in products that H.A.A. knew had been acquired outside of Convenience Food Mart with food stamp benefits.

All in violation of Title 18, United States Code, Section 371.

> A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

10